151763 BASCOM Global Internet v. AT&T Mobility In deciding that the 606 patent was unpatentable as a matter of law at the pleading stage before any discovery had been taken, the District Court ignored the specific technological problem that the patent was directed to, as well as the specific technological solution to that problem disclosed in the patent. And in doing so, it ignored the teachings of this court in cases like DDR Holdings that when a claim solution is necessarily rooted in computer technology, in order to overcome a problem specifically arising in the realm of computer networks, it passes muster under Section 101. And I want to start out by talking about what the problem is. The District Court's decision characterized the issue that the 606 patent was directed to as filtering content in the abstract. Now, even just a cursory review of the patent shows that it was not directed to that abstract concept, but rather was specifically directed to a limitation of the technology of the day. And specifically, how can you have individualized Internet content filtering that you didn't have to implement on the local client machine, that essentially you could do in the cloud instead? That was a limitation of the computer network itself, and the patentee endeavored to say, how can we make the network better? Let me ask this question. Do you believe that you could have an initial computerization of a concept that would be unpatentable, but have a later patent that improves on that computerization be patentable? Well, I don't know about that question in the abstract. I mean, here we're dealing... Let's not use the word abstract. Yeah, no, I know. The issue here is one that arose in the computer network sphere specifically, and it arises for a specific reason. You have a network of disparate users. You have millions of users, potentially all over the country, and everyone may want to have a particular type of Internet content filtering. At the time of this patent, however, if you wanted to do an individualized solution, it was only implemented on a local client machine. You had software out there like NetNanny and SafeSearch at that time. You'd have to load it onto your computer. And that's, in fact, what this patent talks about. It talks about the specific disadvantages of that type of approach. It can be circumvented. You had to have software that could interface with your particular platform on your computer. To restate Judge O'Malley's question in a specific hypothetical, what if in 1995, before your application, someone filed an application with claims to a system for filtering content on the Internet in which the local computer has certain filtering elements, whitelisting certain addresses, blacklisting other addresses? Do you think that would be patent eligible? I think that would present a closer question than the patents and the claims in this case do. Obviously, what about a claim that was a claim for filtering content on the Internet in which search results are filtered with whitelists and blacklists? Do you think that claim that I just presided would be patent eligible? I think that it could be if you looked at the specific logic of the claims, and that's an important consideration. If the claim just said that, what I just said. I mean, if you're just saying. I mean, what you're proposing, Your Honor, is something that's very close to the concept of filtering content, do it on the Internet. And I think this court in several cases and the Supreme Court and Alice and other decisions have said that when you just take something that is a common, well-understood practice and say do it on the Internet, that poses Section 101 problems. Okay, so we have a baseline agreement. Yeah, we have a baseline agreement. And I think that that underscores the point here, because when you look at the claims of this patent and what it was trying to achieve, it is far more specific than that. Can you try to answer my other question, though? What if in 1995 someone filed the patent application with the claim, I'm going to have software installed on my computer that filters the search results using white lists and black lists? Do you think that would be patent eligible? I think it may be. And I think it's because when what we're dealing with in cases such as Alice or even going back as far back as Parker v. Fluke, I mean, these were cases where you were talking about just generic natural phenomena or formulas, and it was just like, can we do it on a computer? But what you're proposing in your hypothetical, I think, is something very closer to, like it almost gets to a specific algorithm of how we would do this. And so just to give you an example with respect to this patent, if you look at Figure 6 of the patent and Claims 22 and 23, there's a specific architecture for an ISV server that's disclosed, and it includes a master inclusive list and separate inclusive and exclusive individual lists. That's how the individual filtering is accomplished. But I think your problem is, and I think actually your argument is going further against you than you wanted to because the problem is that from Alice or Bilski, the very simple concepts all the way through, say, Ultramershal or others where there's actually a lot more computerization, that is still determining how to use a computer to carry out a basic concept. So my question is, and I think that it's probably a better argument, is that what DDR Holdings was teaching is that even if that initial computerization might not be patent eligible, if you then create problems with that computerization that need some inventive step or inventive concept to be fixed and it can be done better, does that all of a sudden make the second generation patent eligible? Well, I think that's probably a better way to put it, and I agree with that, because in DDR Holdings, one of the prime reasons why the patent there was found to pass 101 muster was because it wasn't just using the Internet in a routine and conventional way. It was disclosing a very specific way to use the Internet that was different than what was being done before. In a word, it was trying to improve the technology that was existing at the time to make it work in a slightly different way. And that's exactly what's happening here. And does it matter, then, what problem you're trying to solve? Like, in other words, whether the problem is with the fact that you want to have a simpler way to filter content versus a problem of we want a more sophisticated computer or we want to fix a problem that computerization caused. I think that the question is only relevant because under this court's cases and the Supreme Court's cases, they ask whether at step one of the Alice inquiry there is an abstract idea. But I think you're exactly right that when we're dealing with a situation where you're actually trying to improve how the network is functioning to address a problem that has been raised by computing and the way that this has been done in the past, then you're not even talking, you're not even in the case that it's directed to. In Alice and other cases, the real issue is are you taking some sort of well-known business method or an economic practice and then trying to monopolize that by saying, well, let's do it on the internet or let's do it with the computer. That's precisely what the court in DDR Holdings said was going on in cases like Ultramershal, that there was an economic practice there. I think it was selling advertisements in exchange for copyrighted material with the general instruction to do that on the internet. And DDR Holdings distinguished that case and said, well, here, as we're saying, we're not just saying use the internet in a routine and conventional way. We're saying use it in this very specific way. And that was the distinguishing feature. And I think that the problem that we get to in these 101 cases is that, as the Supreme Court said in Alice and as this court has said in the first Ultramershal decision, you can always boil down a patent to some conceivably abstract idea. I have another case that involves spinal implants. And you could say, well, the abstract idea there is fixing spines. And you can't just – the actual implant that you're disclosing is just saying do it with implants. I mean, you could always do that. But what the Supreme Court said is a patent is not rendered ineligible simply because it involves an abstract concept. And the court in Ultramershal went further and said a court shouldn't go hunting for an abstract idea. Yeah, but that was the first Ultramershal. There were three, unfortunately. I think that that's right. But I think that the principle is sound. And I think it's well represented by what happened here, where the district court really didn't look at the specifics of what the patent was trying to address and then what the solution was. But once it latched on to the idea that there was potentially an abstract concept at play, it sort of overgeneralized that and said, well, it's a filtering concept. And just to buttress the district court's analysis, it used these real-world analogies. For instance, a librarian who keeps certain books away from children or parents who have magazines that they don't let their kids look at. And I think that really shows the misfit between those analogies and what's going on here, I think, is telling. Because the problem that was trying to be addressed here was specifically  individualized Internet content filtering from a remote centralized area. How do you do that? That's not even a problem that is addressed by any of the real-world analogies that we're talking about. Well, what about a school board that's trying to figure out what kind of lesson plans to give to elementary schools? And then, in a sense, they're filtering content by using certain textbooks for the first graders versus textbooks for the fifth graders. In a sense, that's a remote server filtering content to all these disparate local users. Well, I guess two responses to that. First of all, I don't know that that would qualify as the individualized customizable type of content filtering that the patent was trying to get to. But secondly, the whole thing that we're talking about here, and I think, Judge O'Malley, this gets to your point, is content filtering that is built into the communications infrastructure itself. That is something that's very unique to the Internet space, and something that's not presented really in these real-world examples that we're talking about. And I think it gets to the ultimate point that what we're dealing with here is far different than some of the other cases where the idea, the concept that's being addressed is something that really is a real-world, non-computerized issue that's just being computerized, and that's the only innovation that the patent is claiming. This is a problem that was arising in the computer space. But the problem with your case, it seems, based on all of this exchange, here we have these two extremely broad claims that, if you look at them again in the abstract, could very well read on the school-kindergarten filtration, and yet they were presented as typical, as representative. You now ask us to review why the more detailed claims were not considered by the court. It doesn't look, from the record, as if that was presented. There is a stage, we all know there is a stage, between the abstract and the concrete at which a boundary is crossed. It's always hard to find that boundary, but here we aren't really even presented with that boundary, except now on appeal, you complain that the district court did not find a boundary and move on to the detailed claims. Now, our general observation is that by the time you get to sufficient detail to avoid what we're calling abstraction, we may have claims that are readily circumvented, and therefore the argument is on the broader claims. But where does that leave us in that case? I really didn't see any basis for criticizing the trial judge's concentration on the two claims that you presented as representative, and yet there we have almost unlimited breadth. Well, I would disagree that there's unlimited breadth here, and one of the claims that the district court did address was claim 22, which specifically discloses a new type of ISB server, and that's the ISB server that has a master exclusive list coupled with the plurality of sets of two types of lists, inclusive and exclusive lists, if you consider the dependent claim 23. And in terms of what the district court did in dealing with that claim, the district court did not consider all the elements as a combination to determine whether on the inventive step inquiry there was an attempt to limit the invention to something so that it wasn't just covering all of filtering content. But if you look at the claim, that's specifically what it does. It talks about one way of orienting an ISB server that didn't exist in the prior art that would be able to accomplish individualized content filtering for all of the local client machines that it was servicing. But the court didn't consider it as a combination. The court just looked at every element in isolation. But that's the opposite of what you're supposed to do in cases like Diamond v. Deere all the way through Alice, which say you have to look at the claims as a combination. And I would just add one point, which is this is a patent, and especially claim 22, the district court reviewed that. That is a claim that was found valid and infringed in a case that went to trial against AOL. A jury looked at these patents after there was full discovery and after there was experts on both sides to talk about what was new in the art, what was non-obvious, and that jury determined that the patents were valid. Here we don't have any discovery. And one of the things that the other side does and that the district court did here is to say, well, all of these elements are really well-known in the art, but we're at the pleading stage, and the facts have to be construed in our favor. So on the issue of novelty, there's a presumption that these patents are new and novel and non-obvious and not anticipated. But the district court appears to have taken those presumptions and thrown them out the window. We don't think that was proper, especially when there's no effort to look at the elements of the claims as an ordered combination. As I understood your claim in the face of the prior art, it was known and it had been done before to put filters on local computers, individualized filters, correct? Well, they're individualized as a matter of just the fact that they're on a local computer. And then it was also known to put a filtering scheme on a remote ISP server, but then it would be a one-size-fits-all. And so each of those was a solution to filtering content on the Internet, but they both had respective disadvantages. The first one, local users could hack through it on the local computer. The second one, it was a one-size-fits-all scheme. You wouldn't be able to individualize or customize the filtering for particular disparate users. That's correct. And then your claim convention is directed towards having the filter physically located at the remote server, but at the same time having the feature of being able to customize using individual filtering elements the filtering done for all the different local disparate users. And the ISP server is able to do that because due to the TCPIP protocol, the server is able to recognize the address of the particular users requesting information from the Internet. Is that right? That's correct. And so, therefore, you're saying that this is some kind of technical solution overcoming the problems of prior art filters. Well, that's right. And I would point out two things that I just want to make sure are clear. In the prior art, a local client machine, we say that it was doing individualized filtering, but it wasn't really doing individualized filtering. It's just that since it was loaded on the person's machine, it just had to filter for one user. So that's not exactly what's implemented here. And you mentioned that the ISP server is able to do this, I think, through the TCPIP connection, but it's able to do this because of the specific logic that's disclosed in the claims. I mean, if there's another way to do it that isn't what we've disclosed here, then that's fair game in the case, and I'm sure AT&T will have strong, they'll have a robust non-infringement report that they submit later in the case. We just don't have that now because we're dealing with this at the pleading stage. If we have to show that the specific logic that is disclosed in these claims is what infringes AT&T's system, and it's that logic that allows us to do this. And I think, Judge Chen, what we're getting to here, I think, is very close to an invalidity analysis where we're trying to figure out if this is something that is really new. But, of course, we're at the pleading stage again, and it would be improper, and that's what the court said in Diamond v. Deere. You must presume that this is a novel invention  or anticipation under some of the other prongs of the title. Isn't there a novelty inquiry that's at step two of myriad? I actually think that there's a little bit of distinction because inventive step is specifically, the purpose of it is to make sure that you're not trying to monopolize the whole idea. And the idea, the district court says here, is filtering content writ large. There's no question when you look at these claims that there's no attempt to monopolize the entire field of filtering content because of the specificity. It's not a question, really, of novelty. It's one more of specificity. That's what DDR Holdings said. The question that the court asked is, are we talking about the routine and conventional use of the Internet, or is what's being disclosed here a specific way of doing things, something that was different than what was done before? Right, and then the judge below, Judge Lynn, I think, said that everything here is known, routine, and conventional. Right. So where do you think she lost track of the right analysis? Well, I think that what the district court judge, what the district judge did here, I think, was look at those elements in isolation, and she didn't have any discovery in the record. The proper thing to have done at this stage, if the real question in her mind and in this court's mind is, well, are these innovations really new? Is there really something that is not obvious or not anticipated by the prior art? The proper course would be to have discovery in the case and actually see where we end up, because we're at a stage right now that no discovery is in the record. The normal procedures on a 12b6 motion would apply to this case, in which you would presume all of the facts and take all inferences in the plaintiff's favor. I really don't think that that's been done here. And I do think that there is a disconnect between the question of novelty, which is informed by facts. You have to actually look and see what was in the prior art, what was really known and conventional. You can't just make assumptions about that. The reason why the district judge and the appellees here are able to say that certain things in isolation are well known in the art, because some of the different elements are. But the same thing goes for DDR holdings. I mean, if we look at some of the aspects of the claims there, I mean, they were all conventional when you look at the elements. I mean, I think a lot of the claims talked about things like If you broke out all of those elements out, you would find that they were all conventional. But what the court said is when you put them together, this was something more than just the routine and conventional use of the Internet. And in the prior cases where there's been a 101 problem found, that's been the issue, is that you really have something from the real world with an instruction to use it on the Internet, do it on the Internet. And this is something far beyond that. This is something where we have a claim that is disclosing specific logic on how to filter content at an ISP level. This is a technologically-based solution to a technologically-based problem. I see them way over my time, so if there's no further questions, I'll... Can you just identify what's the technologically-based problem? How do you define it? Sure, and the patent talks about that in columns one and columns two, which is at the time of this patent, content filtering was done at the local client machine level if you wanted to have any chance of individualization. And that ran into four technological issues, which is one, you could have circumvention. Two, you could have... It was hard to customize the features. Three, you'd have to have specific software that interfaced with your local client platform. And four, that you'd have to have a database that you'd have to update yourself. And so, obviously, in a world where we have networks of disparate users, the question is, can we do it better? Can we do it on the cloud, essentially? And that was the object of this patent. And look, Bascom was a company... Bascom was not someone who acquired this patent and has just been trying to litigate against people. Bascom is a company based in New York that actually made and sold these solutions to clients, you know, including schools in New York, because there was a perceived need for this type of solution, for someone to do this on an ISV server level. But again, there are a lot of factual questions here that have just gone unanswered. And I think if we had a more complete record, this court would see, just as the jury saw in the AOL case, where the patent was found to be infringed and valid, that this is a particular technological solution to something arising in the computer network space. Okay. Let's hear from the other side. We'll save you a little time. Mr. Board. Good morning, Your Honor. May it please the court. There seems to be agreement that the concept here, or that the patent goes to an abstract idea, and that is the idea of filtering content. And the idea of filtering Internet content adds nothing to that. This court has been very clear with respect to that. I believe in the old commercial case, the court referred to the Internet as a ubiquitous information transmission medium. So the question, as I understand it, as it's been posed by the appellant in this case, is whether filtering here is different from filtering there, is different from filtering anywhere else. The answer to that question is no, because in each of the three instances, the first instance being the computer on the desk, the second being the computer that is in a local area network, the third being the computer that is the ISP server itself. The instructions that each of those computers are executing are essentially the same instructions. They are pedestrian, they are well-known, they are simple if-then logical statements. Are you disputing the arguments that your friend on the other side has made with respect to the problems posed by just doing filtering at the local level? There are different ways or different, I guess, benefits of filtering in each location. There's no question about that. The question is whether the recognition of those differences is inventive. That's really the question. Well, how do we make that determination on a 12 v. 6? Yeah, and that also sounds like an obviousness inquiry. It isn't an obviousness inquiry. In fact, in this particular case, what the specification of this patent tells us is that we can do filtering here. It talks about the local computer. We can do filtering there. It talks about the computer in the local area network, and we can do filtering anywhere. But that's in description of the prior art. It is in the description of the prior art, but it also tells us what's inventive and what's not. And as this court has pointed out, there is some overlap between those two issues and between those two considerations. Well, as far as we know, there's no anticipatory Section 102 reference that teaches physically locating a filter over at the ISP server in which that filter has the feature of being able to provide individualized filtering for all the different local disparate users requesting information. As far as we know, there's no 102 reference about that. Is that fair to say? Yeah, there's no such reference. And is it also fair to say that a filter located there with those kind of features overcomes disadvantages of the described prior art forms of filtering as described in the patent? I would disagree with that. Don't you have to agree with it for purposes of a motion to dismiss? I don't think so, because in this particular case, what we're looking at is we're looking at the execution of statements on a regular general purpose computer. If I can step back a little bit and separate the abstract idea part of the test from the implementation part of the test. The abstract idea includes multilevel filtering. The abstract idea includes filtering that is customized to the particular individual. Where is that abstract? Excuse me? What's abstract about that? You might say that there are obvious elements, but you get to the point at which you lose the abstract concept and get into the next phase of, in fact, was there a contribution not in the prior art? Yes, Your Honor. If we step back a little bit and look at the way filtering occurs in the real world, it can be very helpful. Judge Lynn did that in her opinion. Multilevel filtering, filtering that is customized to a particular individual, is all over the real world. Judge Lynn talks about different children in the same family, whether they would have access to a particular book or some particular material. So that's a matter of obviousness, is it not? It could be, but the obviousness inquiry is a fairly structured inquiry that deals with whether a particular combination of references can invalidate or make obvious a particular claim. In this case, the question is not the rigorous obviousness analysis. It is rather whether what is disclosed in the claims contains an inventive concept that takes the claim out of the realm of the abstract idea to which the patent itself is addressed. Okay, so let's pose the question like this. The district court found that filtering content is the abstract idea underlying these claims, and that is in fact something that your side agreed to. The next question then becomes is there an inventive concept here, and why isn't the inventive concept here the invention, as recited in the claims, of a tool of locating the filter not at the local computer but at the ISP server where this tool has the, as far as we know, unique feature at that location for the tool of the ability to do individualized filtering thanks to the fact that the ISP server, by virtue of how communication networks work, knows the particular address of each user requesting information across the network. I do think that the court's opinion in the intellectual ventures case really does resolve that problem, takes care of that problem in talking about the customization of responses to inquiries. The intellectual ventures case deals with that. Judge Mayer's concurring opinion in the IP case also addresses that. But in connection with this particular issue here, let's look at what's being added. When you move the filter to the ISP server, the ISP server is already filtering in a number of senses. We don't know how many, but at least it's deciding who gets to talk to the IP server. That is conceptually an event of filtering. What this patent describes is a series of if-then statements that are located on the ISP server, which is a generic computer, but a series of if-then statements that are really exchangeable with one another. For example, what is the difference between an inclusive list and an exclusive list? What is the difference between a master inclusive list and a master exclusive list? Let's say there are three doors, A, B, and C. A particular individual is to be denied access to C. You can write a routine that simply says that person gets into A and B. Or you can write a routine that says that person is excluded from C. That's an inclusive list. It's an exclusive list. But what it really is is a very well-known, often implemented, well-understood computer concept of how to define what data gets retrieved. In that sense, it is very much like, although less complicated than, the database cases, such as, for example, the intellectual ventures case where data is being returned. It's similar to that in that you have the ability to retrieve information and send it back. This court has recognized that that is a well-understood concept. Yes, Your Honor. To me, the specific details of maybe how the filtering operates, whether it's exclusive lists, inclusive lists, maybe let's just put that to the side for a second. I keep wondering why this isn't just looking at an overall communication network and the invention is locating a tool in a particular location over that overall communication network and then giving it some specific features. Those features are individualized filtering. Let me give you an example. What about a garden hose that you connected to a faucet? Then maybe it was known in the art to put the filter in the spray nozzle. But somebody comes up later with reciting an invention where the filter is located on the faucet. So now the filter is located between the faucet and the distal end of the garden hose. Is that an abstract idea that's not an inventive concept? It's not an inventive concept in the context of this case, and I'll tell you why. This invention is not the idea to move filtering from the local computer to the ISP server because this patent itself tells us that that is there, that already exists, that America Online does it. So the benefit of where the control is, that's more in the nature of a discovery if you think about the scientific principle cases. As it turns out, if you do what America Online did, what everybody knows America Online did, it has an added advantage of allowing central administration. That's true. Just as picking the computer up and moving it into a locked room and locking the door has the advantage of enhancing the security for that computer. So why isn't your argument based on obviousness rather than abstraction? Isn't that much easier from your viewpoint as well? Rather than worrying about at what stage there are enough details in a claim so that it's no longer abstract but moves towards the concrete or wherever the line is. But wouldn't the argument based on what you're telling us be the same wherever this line is drawn if in fact it were obvious because of these prior art events and knowledge? Your Honor, the answer to that question I think is maybe, but there are two available inquiries for us based on the Supreme Court's decision in Alice and Mayo. It is not merely obviousness. There's an additional threshold inquiry that we look at before we ever get to the obviousness. Every such opinion carefully states, the Supreme Court was very careful to state that these are fact-dependent, fact-controlled conclusions. And on those facts, these were the rules to be drawn from those facts. And so here we have another set of facts. And we are told, again, when you apply the rules, the criteria of abstraction are not met. It is certainly true that each one of these cases stands on its own. And the first thing that we did, that I'm sure appellant did, when trying to decide where this case fits is, is it more like DDR holdings or is it more like intellectual ventures, for example? So every case is certainly different. But it is certainly also true that when deciding whether a patent or whether claims in the patent go to patentable subject matter, Section 101 stands as a gateway before we even begin to the obviousness, before we even begin the obviousness analysis, which I'll also add, as the Court is aware, has some specific requirements and criteria that don't exist when determining whether something is an inventive concept. Remember, we never get to inventive concept unless we've already determined that the patent is directed toward an abstract idea. Well, going back to where I started with your friend on the other side, do you agree that the initial computerization with a general purpose computer of a concept could be non-patent eligible, but an improvement on that type of computerization that is directed to the mechanisms of the computer itself or to how the Internet is used, that that could be patent eligible? I think it's theoretically possible. Well, let me give you an example. The concept that you would sell product from a manufacturer to a purchaser and you would use a computer to do it. That presumably wouldn't be patent eligible, right? But you then sell product from a series of manufacturers and you use a one-click to allow the purchase to occur. Now, that's a totally different approach. It still plays on the original concept of selling product, but it improves the system, the computerized system. Now, why would things going down that road, why wouldn't they be patent eligible? I think some things could be. I can't really comment on the actual example that the court has given. But, again, you have to look at, first you look at the concept and then you look at whether the implementation of the concept or the implementation of the abstract idea supplies an inventive concept. And what this court has held increasingly on many occasions is that running these very kinds of software routines on a generalized computer is something that does not supply an inventive concept. I guess that's really the question. Is this an idea that's being run on the Internet network? Or is this invention something about doing something to the Internet network in a specific way by installing a tool in a specific location? It's definitely the first. It is. I knew you'd say that. My answer is predictable, Your Honor. Now, say it's because something something. Say it's because all that is supplied is programming logic. All that is being supplied is programming logic on an existing general-purpose computer, which is the ISP server. The logic that's being supplied is logic not only are we able, from looking at the other cases of this court, to ascertain that that logic is not inventive. We know that logic is not inventive because the specification of this very patent tells us so. Well, stop right there. Yes. DDR Holdings. I mean, one could say there's nothing more there, inventive, than programming logic to co-display visual elements from two different websites and create a hybrid web page, right, based on the click of a link. So that doesn't answer the question enough. One could say that, but one would be wrong, because DDR Holdings really is different. And while DDR Holdings certainly does involve programming logic, it does not involve well-known routines the way this does. And to me, the vivid example But how could we decide that on a motion to dismiss? You say there are well-known routines, but there's no evidence in the record of that. In Alice, for example, the court referred to textbooks. In this case, one can look at the other opinions of this court. One can look at the language in these claims, and one can determine that, in fact, these are the same kinds of concepts that were found not to be inventive in those other cases, for example, in Intellectual Adventures. But here, the patentee gives us three extra tools. Four extra tools, actually. The patentee tells us that content filtering on the local computer is known. The patentee tells us that content filtering on the local server is known. The patentee tells us that content filtering on the ISP server is known. And then the patentee tells us that a person of ordinary skill in the art would recognize that hybrid filtering schemes that combine a number of filtering schemes are known, are possible. So we have within the specification of the patent itself all of the tools we need to make that determination. To me, my reaction to your observations are maybe you've got a compelling case for Section 103, that all of these individual elements were known in the art, and maybe due to the nature of the problem to be solved, because all those different known ways had their own individual disadvantages, would lead one, given the nature of communication networks that a remote server knows who it's talking to, would centralize the filter and create individual filters at that remote ISP server. That's what has been claimed. That particular ordered combination of all the elements, as far as I know, has not been known, nor did the judge below analyze that as an ordered combination. But nevertheless, that seems more like a question for obviousness rather than a question of overall patent eligibility. Well, it could certainly be a question of obviousness. And the Court may well be right that there's a compelling obviousness case. I said may. I didn't say there's compelling. There may be a compelling obviousness case here. But we are not talking about obviousness in this case. And it's important to recognize that once we begin with an abstract idea, your ordinary obviousness case doesn't necessarily begin with an abstract idea, and it doesn't require an abstract idea in order to go to that. It's only where we've already found that these claims are directed to an abstract idea that we look at the inventive concept. And that creates a different inquiry, and I would submit to the Court in some ways a less rigorous inquiry than the obviousness inquiry would be, because you have to look at those claims where you've decided. This goes to filtering content. It goes to filtering Internet content. Is there anything in this claim language, either individually or as an ordered series of statements, that removes this patent, these claims, from the realm of an abstract idea? And where, as here, the steps themselves are all well-known. The patentee tells us they're well-known, that combining the steps are well-known, and that putting the filtering scheme on an ISP computer is well-known. It does not take the claim out of the realm of subject matter that is not patentable under Section 101. Okay. I think we need to move on. Thank you, Mr. Boyle. Thank you, Your Honor. Mr. Subramanian. Thank you, Your Honor. I don't think that, you know, just listening to my friend on the other side's argument, I don't think you can really call that anything other than an obviousness challenge that's being made at the pleading stage. And we really don't have any record at all. There's been no discovery in the case. And as I said, on a 12B6 challenge, which is what this is, all of those facts concerning obviousness should be construed in our favor. And I think that presumption is especially strong here, given that there's been actually a jury verdict in another case, where a jury who did see the evidence found that each of these patents that we're planning to assert in this case was valid over the prior art. We're not even talking, I think, at this point, about whether we're trying to claim ownership to the basic building blocks of ingenuity. We're not even talking about that. We're really just talking about whether these inventions were in the prior art or not. That's not what the 101 inquiry, I think, is supposed to be. And if you look at cases like DDR Holdings and look at what the elements of the claims were, I mean, they look pretty conventional to me. I mean, you're talking about the steps individually, receiving a signal, identifying a web page, retrieving data, and generating and transmitting a web page. Well, that's all, you know, those are individual steps or conventional, but the way it was put together was an improved way of using the network, not the routine and conventional use of the network. And that's the same thing here. As Judge Shen, as you pointed out, this is a tool by moving filtering to the ISP server level and having particular features with that, we were able to improve upon the functioning of the network itself. And Judge O'Malley, I think you raised a hypothetical at the beginning and I sort of ran away from it, but it was the question of if you had an abstract idea that could be initially computerized and maybe that poses Section 101 problems, could you have an improvement on that that wouldn't raise those same problems? And I think that's exactly what the Supreme Court said in Diamond v. Deere. In that case, there was an equation that I think would probably qualify as an abstract idea. And the question was, well, do the other elements of the claim add anything to that? And the court said, well, you know, and I'm sure in that case if it was just to use it on a computer, it would probably run into 101 problems. But what the court said was what was being disclosed was an improved process, in that case for molding rubber, by solving a practical problem which had arisen in the molding of rubber products. And because if you looked at the process as a whole, it provided something that showed that you weren't just trying to patent the overall abstract idea, that was in fact patentable. So I think you're exactly right that you can have situations where an improvement, in the case of a network for instance, that that would be in fact patentable. This is a case where I think if you actually look at the claims at issue, there was a specific technological solution to a specific technological problem. And AT&T is going to have full opportunity to make arguments such as anticipation, obviousness, non-infringement as the case goes forward. And we're going to have a full evidentiary record on which that can be determined. But throwing out these claims at the pleading stage on 101 grounds, I think is the... I guess just to be fair, the other side, they're saying filtering content on the Internet, that can't be patent eligible. And where the filtering occurs doesn't make a difference. Right, and I'm glad you reminded me because I think that the appellee started his argument by saying that we were in agreement on step one as to what the abstract idea here. We don't agree at all because the idea here was not just filtering content. It was specifically how to address a problem that arose in this networking space, which is you have many different users. You want to have individualized content filtering, but not performed on every particular client machine. So I don't think we agree on that threshold step of all we're trying to do here is filtering content. But to answer your question, we then have to look at the claims, as Ultramershal and other cases say. We look at the actual claims. We're not just saying move it to this particular location, which I think was a novel step. I think people weren't doing that at that time. It's moving it there with those particular features that provide a novel combination that answers a problem in the prior art. That problem, which is talked about in columns one and two, was that having this filtering done at a local client machine level was causing all sorts of problems. So why don't we not only move it to the ISV server level, but then we have to be able to have the type of logic that would be able to service many different users and filter content in an individualized way. And that was a novel solution at the time. It's one that my client actually incorporated into its products and sold to customers. And I think it was improper for the district court to, on no factual record whatsoever, essentially make an obviousness determination to throw out this patent on 101. Just so I understand, the reason why this invention can work the way it does is because it somehow takes advantage of the inherent nature of communication networks such that a remote server knows who it's talking to when it's dealing with all these remote users? I think that's one aspect of the invention. But then it has to couple that, the fact that it can communicate with the disparate network of users, with the type of logic that would allow it to process requests and then either accept a content request or deny a content request. Okay. Any more questions? Thank you very much. Thank you both. The case is taken under submission.